UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| **In re: OXYCONTIN ANTITRUST LITIGATION** <br><br> This Document Relates to: <br><br>    Louisiana Wholesale Drug Co., Inc. <br>    Civil Action No. 04-CV-229 (SHS) <br><br>    Rochester Drug Cooperative, Inc. <br>    Civil Action No. 04-CV-327 (SHS) <br><br>    Meijer, Inc. <br>    Civil Action No. 04-CV-494 (SHS) <br><br>    Valley Wholesale Drug Co., Inc. <br>    Civil Action No. 04-CV-1014 (SHS) <br><br>    SAJ Distributors, Inc. <br>    Civil Action No. 04-CV-1354 (SHS) <br><br>    Walgreen Co. et al., <br>    Civil Action No. 04-CV-1446 (SHS) <br><br>    Albertson's, Inc. et al. <br>    Civil Action No. 04-CV-9649 (SHS) <br><br>    CVS Pharmacy, Inc. et al., <br>    Civil Action No. 04-CV-3719 (SHS) <br><br>    NeighborCare, Inc. <br>    Civil Action No. 04-CV-3156 (SHS) <br><br>    Care Pharmacies, Inc. <br>    Civil Action No. 04-CV-3890 (SHS) <br><br>    Medic Drug, Inc. <br>    Civil Action No.04-CV-4574 (SHS) | 04-MDL-1603 (SHS) <br> <u>ECF CASE</u> |

**DIRECT PURCHASER CLASS PLAINTIFFS' AND
NON-CLASS PLAINTIFFS' REPLY MEMORANDUM
IN SUPPORT OF JOINT MOTION TO LIFT THE STAY**

As we demonstrated in our initial memorandum, Plaintiffs are not bound by the Court's fact-finding in the *Mallinckrodt*, *Actavis* and *KV* cases, and giving preclusive effect to that fact-finding in these cases would be inconsistent with issue preclusion law, the due process clause and the Seventh Amendment. In its Opposition, Purdue does not dispute these fundamental propositions. Purdue nevertheless contends that Plaintiffs' antitrust claims—which have now effectively been stayed for more than four years—should continue to be stayed pending the final outcome of Purdue's recently-filed patent cases because "success" in those cases will bar Plaintiffs' claims as a matter of law. Purdue's position is without merit. Plaintiffs' antitrust claims are not based on the prosecution or the outcome of the *Mallinckrodt*, *Actavis* and *KV* cases, and whatever efficiencies may have derived from staying the antitrust claims until the resolution of Purdue's patent claims have long since been realized. The Court should lift the stay and allow the antitrust claims to proceed to resolution.

Actavis Totowa LLC ("Actavis") has likewise opposed Plaintiffs' motion to lift the stay, although it has filed a motion of its own to lift the stay on the remaining issues in the *Actavis* patent case. Assuming *arguendo* that Actavis has standing to oppose Plaintiffs' motion, Plaintiffs respectfully contend that this proposed course of action makes no sense. If the Court chooses to lift the stay with respect to the remaining infringement and validity issues in the *Actavis* case, which was filed in 2007, it should also lift the stay on the antitrust issues, which have been pending since early 2004 and have nothing to do with the outcome of the *Actavis* case.

**I.     The Outcome of the Remaining Patent Cases Will Not Determine the Outcome of Plaintiffs' Antitrust Claims.**

Plaintiffs' antitrust claims are not dependent on the outcome of the remaining patent cases, which were filed in late 2006 and early 2007, several years after the filing of Plaintiffs' antitrust claims. The outcome of those cases will not affect either Plaintiffs' sham-litigation or their *Walker Process* claims.

**A.     Plaintiffs' Sham-Litigation Claims Are Not Based on the *Mallinckrodt, Actavis* and *KV* Patent Cases**

Purdue argues that, under the Supreme Court's decision in *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 n.5 (1993), a "winning lawsuit" is by definition a reasonable petitioning effort and therefore cannot be a sham. The problem with Purdue's argument is that Plaintiffs' sham-litigation claims do not allege that the *Mallinckrodt*, *Actavis* or *KV* cases were a sham.[1] Those cases were filed in November 2006 and January 2007, while Plaintiffs' antitrust cases were filed in early 2004.

Plaintiffs' antitrust claims allege that the *Endo*, *Impax* and *Teva* cases were a sham. *E.g.,* Walgreen Amended Complaint ¶ 43 ("the Infringement Action against Endo and the subsequent action against Impax were objectively baseless . . ."); CVS Pharmacy Complaint ¶¶ 50-66 (alleging that *Endo, Impax* and *Teva* cases were a sham).[2] The *Endo*, *Impax* and *Teva* cases were settled rather than litigated to conclusion, and the question of whether those cases were "winning

---

[1]    Of course, Plaintiffs reserve the right to amend their claims based on information that has come to light since 2004 or is uncovered through discovery. However, Plaintiffs' current claims are asserted in pleadings that were filed in 2004.

[2]    Most of the remaining complaints contain primarily *Walker Process* and overall-scheme claims, so Purdue's argument based on *PRE* would have even less application to those complaints.

lawsuits" will depend on facts that were fixed as of the time of those settlements. The outcome of cases that had not even been filed when the *Endo*, *Impax* and *Teva* cases were settled cannot determine whether those earlier cases were or were not successful.

If Purdue wants to argue that the terms of the *Endo*, *Impax* and *Teva* settlements preclude a claim of sham litigation, as it suggests in footnote 3 of its Opposition, it should (a) produce the settlement agreements, (b) engage in appropriate discovery and (c) file a motion. None of these is consistent with continuing the stay. Purdue's attempt to extrapolate the Court's ruling in *Mallinckrodt*, *Actavis* and *KV* into a determination of "success" in the *Endo*, *Impax* and *Teva* litigations, where there has been no such ruling, would be inappropriate and contrary to the doctrine of collateral estoppel.

> **B.** **Plaintiffs'** ***Walker Process*** **Claims Are Not Dependent on the Outcome of the** ***Mallinckrodt*****,** ***Actavis*** **and** ***KV*** **Patent Cases**

Under *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 174 (1965), "enforcement of a patent procured by fraud on the Patent Office may be violative of § 2 of the Sherman Act provided the other elements necessary to a § 2 case are present." The crucial issues in a *Walker Process* case are whether the patent enforced by the patent holder was "procured by fraud on the Patent Office" and whether "the other elements necessary to a § 2 case are present." Neither of these issues will be resolved by any further proceedings in the *Mallinckrodt*, *Actavis* and *KV* cases.

In its Opposition, Purdue argues that the stay of the antitrust issues should continue in effect because a successful outcome in the remaining patent cases will imply that Purdue was "successful" in its petitioning and thereby dispose of Plaintiffs' *Walker Process* claims. This argument is wrong on at least three independent grounds.

First, as explained above, the enforcement of Purdue's OxyContin patents that is the basis of Plaintiffs' *Walker Process* claims is not their enforcement in the three remaining patent cases, which were filed in 2006 and 2007, but rather their enforcement in the original patent cases against Endo, Impax and Teva. The outcome of the remaining cases could not affect Plaintiffs' *Walker Process* claims unless the Court's fact-finding with respect to the defense of inequitable conduct in the 2006 and 2007 cases were binding on Plaintiffs as a matter of collateral estoppel. As we demonstrated in our opening memorandum, and as Purdue implicitly concedes, it is not.

Second, a *Walker Process* claim cannot possibly depend on whether the patent holder is successful "in seeking patents from the federal government," as Purdue suggests in its Opposition. Opp. at 6 ("Purdue's conduct in seeking patents from the federal government is protected petitioning activity that is subject to *Noerr-Pennington* immunity"). In a *Walker Process* case, the defendant has *always* been successful in "seeking" a patent from the federal government. That simply means that the patent was issued. Under *Walker Process*, issuance of the fraudulently procured patent is an element of the plaintiff's case—not a defense. *See In re Relafen Antitrust Litigation*, 346 F. Supp. 2d 349, 367 (D. Mass. 2004) (the "'best evidence' that SmithKline's [misrepresentations] were material might be that the Patent Office issued the '639 patent").

Finally, Purdue's "success" in enforcing its fraudulently-procured patents against Mallinckrodt, Actavis and KV is likewise irrelevant to the outcome of Plaintiffs' *Walker Process* claims. *Walker Process* liability is not based on the distinction between reasonable and unreasonable petitioning, as "sham litigation" liability is, and is therefore unaffected by whether the petitioning succeeds. *See Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1071 (Fed. Cir. 1998) (distinguishing *Walker Process* claims from sham litigation claims). Liability under

5

*Walker Process* "is based on the knowing assertion of a patent procured by fraud on the PTO, very specific conduct that is clearly reprehensible." *Id.* The fact that the patent holder has *succeeded* in enforcing its fraudulently procured patent, to the detriment of its competitors and its customers, only makes the offense worse.

Purdue's argument based on "success" is a thinly disguised effort to avoid the consequences of Purdue's acknowledgment that the Court's factual findings regarding inequitable conduct do not have preclusive effect in Plaintiffs' cases. The effort is unsuccessful. Whether Purdue wins or loses the *Mallinckrodt*, *Actavis* and *KV* cases is irrelevant to Plaintiffs' *Walker Process* claims, and the Court's fact-finding in those cases is not binding on Plaintiffs under federal issue preclusion law and the U.S. Constitution. The validity of Plaintiffs' *Walker Process* allegations is a matter to be decided by a jury based on the evidence, arguments and record compiled in Plaintiffs' cases.[3]

## II. If the Court Lifts The Stay in the *Actavis* Case, It Should Certainly Lift the Stay in the Antitrust Cases.

Actavis has filed a motion asking the Court to lift the stay of all remaining infringement and validity issues in the *Actavis* case but opposes Plaintiffs' motion to lift the stay in the antitrust cases. With all respect, this proposed course of conduct makes no sense. As noted above, the *Actavis* case was filed in 2007, while the antitrust cases have been pending since early 2004. The enforcement of Purdue's OxyContin patents that is challenged in Plaintiffs' cases is their enforcement against Endo, Impax and Teva in the years 2002 through 2006, not their enforcement

---

[3] *See In re Relafen Antitrust Litigation*, 346 F. Supp. 2d 349, 364-67 (D. Mass. 2004) (denying motion for summary judgment on *Walker Process* claim where the facts underlying Plaintiffs' allegations were in dispute).

against Actavis in 2007 and 2008. The resolution of Plaintiffs' claims will not be directly affected by further proceedings in the *Actavis* case.

## Conclusion

For the reasons stated above and in their initial memorandum, Plaintiffs respectfully contend that their motion to lift the stay should be granted.

Dated: March 17, 2008                    Respectfully submitted,

/s/ Scott E. Perwin
Richard Alan Arnold
Scott E. Perwin
Lauren Ravkind
KENNY NACHWALTER, P.A.
1100 Miami Center
201 S. Biscayne Boulevard
Miami, Florida 33131-4327
Telephone: (305) 373-1000
Facsimile: (305) 372-1861
*On Behalf of Direct Purchaser Class Plaintiffs and Non-Class Plaintiffs*

325752.1