## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

IN RE OXYCONTIN DIRECT PURCHASER
ANTITRUST LITIGATION

**MDL Docket No. 1603 (SHS)**

THIS DOCUMENT RELATES TO:
ALL DIRECT PURCHASER ACTIONS

### DECLARATION OF ERIC L. CRAMER, ESQ. IN SUPPORT OF DIRECT PURCHASER CLASS PLAINTIFFS' APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

I, Eric L. Cramer, Esq., declare as follows:

1.      I am a shareholder of the law firm of Berger & Montague, P.C.   I submit this Declaration in support of the Direct Purchaser Class Plaintiffs' ("Class Plaintiffs") application for an award of attorneys' fees and reimbursement of expenses in connection with services rendered in prosecuting this action.

2.      My firm has acted as counsel to Representative Plaintiff Rochester Drug Co-operative, Inc. ("RDC") as well as co-lead counsel on behalf of the Class Plaintiffs in this litigation.  During the course of this litigation, I and my firm have been involved in virtually every aspect of the litigation.  For instance, attorneys from my firm:

- investigated, evaluated and initiated the action;

- prepared, reviewed and edited pleadings;

- developed the theory of the case;

- participated in leadership and management of the case;

- reviewed and analyzed client documents, document productions and depositions transcripts from related patent and personal injury litigation, and relevant public information;

- analyzed IMS and other industry data concerning generic entry;

- engaged in motion practice concerning MDL issues and discovery and related issues;

- conducted and updated extensive research concerning the viability of *Walker Process*, sham litigation and inequitable conduct claims;

- researched other antitrust, intellectual property and procedural issues;

- evaluated but-for generic entry scenarios and oversaw the calculation of Class damages;

- negotiated, reviewed and coordinated client and Class member approval of the settlement; and,

- prepared and reviewed settlement notices and related briefing and other documentation.

3.      The time spent by my firm's attorneys and professional support staff who were involved in this litigation, and the lodestar calculation based on my firm's current billing rates from inception of the case through the present, are described in the chart below.  The chart was prepared from contemporaneous, daily time records regularly prepared and maintained by my firm.

| **EMPLOYEE** | **POSITION** | **HOURS** | **RATE** | **AMOUNT** |
|---|---|---|---|---|
| E. L. Cramer | Shareholder | 384.50 | $650 | $249,925.00 |
| D. F. Sorensen | Shareholder | 226.00 | $600 | $135,600.00 |
| P. Kohn | Former Shareholder | 224.70 | $500 | $112,350.00 |
| D. Berger | Shareholder | 93.60 | $750 | $ 70,200.00 |
| B. P. Flaherty | Shareholder | 104.00 | $440 | $ 45,760.00 |

| EMPLOYEE | POSITION | HOURS | RATE | AMOUNT |
|---|---|---|---|---|
| C. P. Goodwin | Shareholder | 35.00 | $525 | $18,375.00 |
| M. G. Davidoff | Shareholder | .60 | $750 | $     450.00 |
| E. T. Noteware | Associate | 305.40 | $460 | $140,484.00 |
| D. C. Simons | Associate | 298.70 | $400 | $119,480.00 |
| N. W. Clark | Associate | 202.40 | $425 | $ 86,020.00 |
| S. B. Itri | Associate | 68.30 | $330 | $ 22,539.00 |
| N. F. Mara | Associate | 38.00 | $420 | $ 15,960.00 |
| J. D. Radice | Former Associate | 29.60 | $325 | $   9,620.00 |
| C. J. Enders | Associate | 3.30 | $360 | $1,188.00 |
| J. H. Cook, Ph.D | Expert/Consultant | 112.57 | $275 | $ 30,956.75 |
| B. A. Burghaze | Former Paralegal | 62.00 | $215 | $13,330.00 |
| P. L. Fowler | Paralegal | 17.30 | $215 | $   3,719.50 |
| A. Ebbessen | Paralegal | 7.40 | $215 | $  1,591.00 |
| D. S. Werwinski | Paralegal | 5.50 | $215 | $   1,182.50 |
| K. P. Kemler | Former Paralegal | 4.10 | $240 | $     984.00 |
| **GRAND TOTAL:** | | **2,222.97** | | **$1,079,714.70** |

4.      The hourly rates for the attorneys and professional support staff included above are the same as the usual and customary hourly rates charged for their services in similar complex class action litigation.  Attached as Exhibit 1 is my firm's biography and the biographies of the principal attorneys from my firm who were involved in this case.

5.     The total number of hours expended on this litigation by my firm from inception through the present, is 2,222.97 hours.  The total lodestar for my firm is $1,079,714.70 at my firm's current billing rates.

6.     My firm has incurred a total of $28,938.49  in unreimbursed expenses in connection with the prosecution of this litigation.  The expenses break down as follows:

| **DESCRIPTION** | **AMOUNT** |
|---|---|
| Telephone | $      79.12 |
| Travel | $7,435.36 |
| Reproduction Costs | $2,940.50 |
| Reproduction Costs Print | $      57.50 |
| Filing and Misc. Fees | $    570.08 |
| Commercial Copying and Printing | $   223.59 |
| Computer Research | $6,438.43 |
| Publication | $      25.50 |
| Delivery and Freight | $    168.41 |
| Consulting Fees | $11,000.00 |
| **GRAND TOTAL** | **$28,938.49** |

7.     The expenses incurred in this action are reflected on my firm's books and records. These books and records are prepared from expense vouchers, check records, and other source materials and represent an accurate recordation of the expenses incurred.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: November  24, 2010

Eric L. Cramer
Shareholder
Berger & Montague, P.C.

**Berger&Montague,P.C.**

ATTORNEYS AT LAW

Dated:  November 24, 2010

**BERGER & MONTAGUE, P.C.**

## THE FIRM:

Berger & Montague has been engaged in the practice of complex and class action litigation from its Center City Philadelphia office for 40 years. The firm has been recognized by courts throughout the country for its ability and experience in handling major complex litigation, particularly in the fields of securities, antitrust, mass torts, civil and human rights, qui tam and whistleblower cases, employment, and consumer litigation. In numerous precedent-setting cases, the Berger firm has played a principal or lead role. The firm has achieved the highest possible rating by its peers and opponents as reported in *Martindale-Hubbell*. Currently, the firm consists of 68 lawyers; 17 paralegals; a professional investigator; and an experienced support staff. Few if any firms in the United States have our breadth of practice and match our successful track record in such a broad array of complex litigation.

Berger & Montague was founded in 1970 by the late David Berger to concentrate on the representation of plaintiffs in a series of antitrust class actions. David Berger helped pioneer the use of class actions in antitrust litigation and was instrumental in extending the use of the class action procedure to other litigation areas, including securities, employment discrimination, civil and human rights, and mass torts. The firm's complement of nationally recognized lawyers has represented both plaintiffs and defendants in these and other areas, and has recovered billions of dollars for its clients. In complex litigation, particularly in areas of class action litigation, Berger & Montague has established new law and forged the path for recovery for victims of fraud and other wrongdoing.

The firm has been involved in a series of notable cases, some of them among the most important in the last 35 years of civil litigation. For example, the firm was one of the principal counsel for plaintiffs in the *Drexel Burnham Lambert/Michael Milken* securities and bankruptcy litigation. Claimants in these cases recovered approximately $2 billion in the aftermath of the collapse of the junk bond market and the bankruptcy of *Drexel* in the late 1980's. The firm was also among the principal trial counsel in the *Exxon Valdez Oil Spill* litigation in Anchorage, Alaska, a trial resulting in a record jury award of $5 billion against Exxon, later reduced by U.S. Supreme Court by $507.5 million. Berger & Montague was lead counsel in the *School Asbestos Litigation*, in which a national class of secondary and elementary schools recovered in excess of $300 million to defray the costs of asbestos abatement. The case was the first mass tort property damage class action certified on a national basis. Berger & Montague was also lead/liaison counsel in the *Three Mile Island Litigation* arising out of a serious nuclear incident.

In the area of securities litigation, the firm has represented public institutional investors - such as the retirement funds for the States of Pennsylvania, Connecticut, New Hampshire, New Jersey, Louisiana and Ohio, as well as the City of Philadelphia and numerous individual investors and private institutional investors. The firm was co-lead counsel in the *Melridge Securities Litigation* in the Federal District Court in Oregon, in which an $88.2 million jury verdict was

1

obtained.  Berger & Montague has served as lead or co-lead counsel in numerous other major securities class action cases where substantial settlements were achieved on behalf of investors. Examples of prominent settlements are: *Merrill Lynch* ($475 million), *Rite Aid* ($334 million), *Waste Management* ($220 million), *Sunbeam* ($142 million), *IKON* ($111 million), *Medaphis* ($96 million), *Fleming Companies* ($94 million), *Cigna* ($93 million), *Xcel Energy* ($80 million), and *Alcatel* ($75 million).

Berger & Montague has served as lead or co-lead counsel in 10 of the 100 largest securities class actions settled in the United States since the advent of the Private Securities Litigation Reform Act of 1995 (PSLRA).

In antitrust litigation, the firm has served as lead, co-lead or co-trial counsel on many of the most significant civil antitrust cases over the last 30 years, including *In re Corrugated Container Antitrust Litigation* (recovery in excess of $366 million), the *Infant Formula* case (recovery of $125 million), and the *Brand Name Prescription Drug* price fixing case (settlement of more than $700 million) and the *State of Connecticut Tobacco Litigation* (settlement of $3.6 billion).  The firm has also played a leading role in cases in the pharmaceutical arena, especially in cases involving the delayed entry of generic or other rival drug competition, having achieved over $1 billion in settlements in such cases over the past decade.  Additionally in the human rights area, the firm, through its membership on the executive committee in the *Holocaust Victim Assets Litigation*, helped to achieve a $1.25 billion settlement with the largest Swiss banks on behalf of victims of Nazi aggression whose deposits were not returned after the Second World War.  The firm has also played an instrumental role in bringing about a $4.37 billion settlement with German industry and government for the use of slave and forced labor during the Holocaust.

The *National Law Journal* has selected Berger & Montague in seven out of the last eight years (2003-05, 2007-10) to its "Hot List" of top plaintiffs' oriented litigation firms in the United States with a history of high achievement and significant, groundbreaking cases.  Normally 15 or fewer firms are chosen for this honor.  The *Legal 500*, a guide to worldwide legal services providers, has repeatedly cited Berger & Montague's antitrust practice as "stand[ing] out by virtue of its first-class trial skills."  For four straight years, Berger & Montague has been selected by *Chambers and Partners' USA's* America's Leading Lawyers for Business as one of Pennsylvania's top antitrust firms.  *Chambers USA* has specifically noted that Berger & Montague "specializes in plaintiffs' antitrust class actions, and is noted for its exceptional work in pharmaceutical and financial disputes."  In 2009, *Employment Law360°* named Berger & Montague as one of the top employment plaintiffs' firms in the U.S. selecting only eight law firms in the country for this honor.  Also in 2009, The Public Justice Foundation bestowed its prestigious Trial Lawyer of the Year Award on the Berger & Montague trial team in the Rocky Flats mass environmental tort class action for their "long and hard-fought" victory against "formidable corporate and government defendants," the second time Berger & Montague has won this honor.  The jury verdict in that case was vacated on appeal; a petition for rehearing is pending.

## JUDICIAL PRAISE FOR BERGER & MONTAGUE ATTORNEYS

Berger & Montague's record of successful prosecution of class actions and other complex litigation has been recognized and commended by judges and arbitrators across the country. Some remarks on the skill, efficiency, and expertise of the firm's attorneys are excerpted below.

### *Antitrust Litigation*

From **Judge William H. Pauley** of the U.S. District Court of the Southern District of New York:

> "Class Counsel did their work on their own with enormous attention to detail and unflagging devotion to the cause. Many of the issues in this litigation . . . were unique and issues of first impression."

> \* \* \*

> "Class Counsel provided extraordinarily high-quality representation. This case raised a number of unique and complex legal issues . . . The law firms of Berger & Montague and [another firm] were indefatigable. They represented the Class with a high degree of professionalism, and vigorously litigated every issue against some of the ablest lawyers in the antitrust defense bar."

Regarding the work of Berger & Montague shareholders Merrill G. Davidoff and Ruthanne Gordon in *In re Currency Conversion Fee Antitrust Litigation*, MDL No. 1409, M21-95, slip op. at 33-34 (S.D.N.Y. Oct. 22, 2009)

From **Judge Charles P. Kocoras** of the U.S. District Court for the Northern District of Illinois:

> "The stakes were high here, with the result that most matters of consequence were contested. There were numerous trips to the courthouse, and the path to the trial court and the Court of Appeals frequently traveled. The efforts of counsel for the class has [sic] produced a substantial recovery, and it is represented that the cash settlement alone is the second largest in the history of class action litigation. . . . There is no question that the results achieved by class counsel were extraordinary[.]"

Regarding the work of Berger & Montague shareholders H. Laddie Montague and Peter R. Kahana, among others, in achieving a more than $700 million settlement with some of the defendants in *In Re Brand Name Prescription Drugs Antitrust Litigation*, 2000 U.S. Dist. LEXIS 1734 at *5-6 (N.D. Ill. Feb. 9, 2000).

3

From **Judge Donald W. Van Artsdalen** of the U.S. District Court for the Eastern District of Pennsylvania:

> "As to the quality of the work performed, although that would normally be reflected in the not immodest hourly rates of all attorneys, for which one would expect to obtain excellent quality work at all times, the results of the settlements speak for themselves. Despite the extreme uncertainties of trial, plaintiffs' counsel were able to negotiate a cash settlement of a not insubstantial sum, and in addition, by way of equitable relief, substantial concessions by the defendants which, subject to various condition, will afford the right, at least, to lessee-dealers to obtain gasoline supply product from major oil companies and suppliers other than from their respective lessors. The additional benefits obtained for the classes by way of equitable relief would, in and of itself, justify some upward adjustment of the lodestar figure."

Commending the skills of firm then chairman David Berger, shareholder Martin Twersky, and other Berger & Montague attorneys, in ***Bogosian v. Gulf Oil Corp.***, 621 F. Supp. 27, 31 (E.D. Pa. 1985).

### *Securities Litigation*

From **Chief Justice Steele** and **Justices Holland, Berger, Jacobs and Ridgely** of the Delaware Supreme Court sitting *en banc:*

Stating that the case was litigated, Chancellor [Chandler] went on to find that:

> "All I can tell you, from someone who has only been doing this for roughly 22 years, is that I have yet to see a more fiercely and intensely litigated case than this case. Never in 22 years have I seen counsel going at it, hammer and tong, like they have gone at it in this case. And I think that's a testimony -- Mr. Valihura correctly says that's what they are supposed to do. I recognize that; that is their job, and they were doing it professionally."

Regarding the work of Lawrence Deutsch and Robin Switzenbaum in ***In re Matter of The Philadelphia Stock Exchange, Inc.***, 945 A.2d 1123, 1143-44 (Del. 2008).

From **Chancellor William Chandler, III** of the Court of Chancery of Delaware when awarding counsel's fee observed:

> "Counsel, again, I want to thank you for your extraordinary efforts in obtaining this result for the class."

Concerning Lawrence Deutsch and Robin Switzenbaum at the Plan of Allocation Approval Hearing in *Ginsburg v. Philadelphia Stock Exchange, Inc.*, C.A. No. 2202 (Del. Ch.) on July 2, 2008.

From **Judge Michael M. Baylson** of the U.S. District Court for the Eastern District of Pennsylvania:

> "The Court is aware of and attests to the skill and efficiency of class counsel: they have been diligent in every respect, and their briefs and arguments before the Court were of the highest quality. The firm of Berger & Montague took the lead in the Court proceedings; its attorneys were well prepared, articulate and persuasive."

Praising the work of Berger & Montague attorneys including Securities Department Chair Sherrie R. Savett and shareholders Carole A. Broderick and Barbara A. Podell in *In re CIGNA Corp. Sec. Litig.*, 2007 U.S. Dist. LEXIS 51089, **17-18 (E.D. Pa. July 13, 2007).

From **Judge David S. Doty** of the U.S. District Court for the District of Minnesota:

> "… [A] just result without the assistance of a governmental investigation," plaintiffs' co-lead counsel Berger & Montague "conducted themselves in an exemplary manner," "consistently demonstrated considerable skill and cooperation to bring this matter to an amicable conclusion," and "moved the case along expeditiously".

Praising the work of Berger & Montague attorneys including Securities Department Chair Sherrie R. Savett in *In re Xcel Energy Sec. Deriv. "ERISA" Litig.*, 364 F. Supp. 2d 980, 992, 995-96 (D. Minn. 2005).

From **Judge Stewart Dalzell** of the U.S. District Court for the Eastern District of Pennsylvania:

> "Thanks to the nimble class counsel, this sum, which once included securities worth $149.5 million is now all cash.  Seizing on an opportunity Rite Aid presented, class counsel first renegotiated what had been stock consideration into Rite Aid Notes and then this year monetized those Notes.  Thus, on February 11, 2003, Rite Aid redeemed those Notes from the class, which then received $145,754,922.00.  The class also received $14,435,104 in interest on the Notes.
>
> "Co-lead counsel … here were extraordinarily deft and efficient in handling this most complex matter... they were at least eighteen months ahead of the United

States Department of Justice in ferreting out the conduct that ultimately resulted in the write down of over $1.6 billion in previously reported Rite Aid earnings.  In short, it would be hard to equal the skill class counsel demonstrated here."

Praising the work of Berger & Montague attorneys including Securities Department Chair Sherrie R. Savett and shareholders Carole Broderick and Robin Switzenbaum in *In re Rite Aid Corp. Securities Litigation*, 269 F. Supp. 2d 603, 605 (E.D. Pa. 2003).

From **Judge Stewart Dalzell** of the U.S. District Court for the Eastern District of Pennsylvania:

"As to 'the skill and efficiency of the attorneys involved,' we can only echo what we said about some of the same lawyers in *U.S. Bioscience*.  The results here are outstanding in a litigation that was far ahead of public agencies like the Securities and Exchange Commission and the United States Department of Justice. . . .  At the same time, these attorneys have, through the division of their labors, represented the class most efficiently[.]"

Praising the work of Berger & Montague attorneys including Securities Department Chair, Sherrie R. Savett, in achieving settlements of over $190 million in *In re Rite Aid Inc. Securities Litigation*, 146 F. Supp.2d 706, 735 (E.D. Pa. June 8, 2001).

### *Customer/Broker Arbitrations*

From **Robert E. Conner**, Public Arbitrator with the National Association of Securities Dealers, Inc.:

". . . [H]aving participated over the last 17 years in 400 arbitrations and trials in various settings, . . . the professionalism and the detail and generally the civility of everyone involved has been not just a cause for commentary at the end of these proceedings but between ourselves [the arbitration panel] during the course of them, and . . . the detail and the intellectual rigor that went into the documents was fully reflective of the effort that was made in general.  I wanted to make that known to everyone and to express my particular respect and admiration."

About the efforts of Berger & Montague shareholders Merrill G. Davidoff and Eric L. Cramer, who achieved a $1.1 million award for their client, in *Steinman v. LMP Hedge Fund, et al.*, NASD Case No. 98-04152, at Closing Argument, June 13, 2000.

## PROMINENT JUDGMENTS AND SETTLEMENTS

The success of Berger & Montague in prosecuting class actions and other complex litigation is best demonstrated by the firm's significant results for its clients. The following is a partial list of some of the more notable judgments and settlements from the past few years:

### *Antitrust Litigation*

***In re Currency Conversion Fee Antitrust Litigation:*** Berger & Montague spearheaded a class action lawsuit alleging that the major credit cards had conspired to fix prices for foreign currency conversion fees imposed on credit card transactions. After eight years of litigation, a settlement of $336 million was finally approved in October 2009. (MDL No. 1409 (S.D.N.Y)).

***In re High Fructose Corn Syrup Antitrust Litigation:*** Berger & Montague was one of three co-lead counsel in this nationwide class action alleging a conspiracy to allocate volumes and customers and to price-fix among five producers of high fructose corn syrup. After nine years of litigation, including four appeals, the case was settled on the eve of trial for $531 million. (MDL. No. 1087, Master File No. 95-1477 (C.D. Ill.)).

***In re Linerboard Antitrust Litigation:*** Berger & Montague was one of a small group of court-appointed executive committee members who led this nationwide class action against producers of linerboard. The complaint alleged that the defendants conspired to reduce production of linerboard in order to increase the price of linerboard and corrugated boxes made therefrom. At the close of discovery, the case was settled for more than $200 million. (98 Civ. 5055 and 99-1341 (E.D. Pa.)).

***In re Terazosin Antitrust Litigation:*** Berger & Montague was one of a small group of firms alleging that Abbott Laboratories was paying its competitors to refrain from introducing less expensive generic versions of Hytrin. The case settled for a $74.5 million settlement. (Case No. 99-MDL-1317 (S.D. Fla.)).

***In re Remeron Antitrust Litigation:*** Berger & Montague was one of a small group of firms alleging that the manufacturer of this drug was paying its competitors to refrain from introducing less expensive generic versions of Remeron. The case settled for a $75 million settlement. (2:02-CV-02007-FSH (D. N.J.).

***In re Tricor Antitrust Litigation:*** Berger & Montague was one of a small group of firms alleging that the manufacturer of this drug was paying its competitors to refrain from introducing less expensive generic versions of Tricor. The case settled for a $250 million settlement. (No. 05-340 (D. Del.)).

***In re Relafen Antitrust Litigation:*** Berger & Montague was one of a small group of firms who prepared for the trial of this nationwide class action against GlaxoSmithKline, which was alleged

to have used fraudulently-procured patents to block competitors from marketing less-expensive generic versions of its popular nonsteroidal anti-inflammatory drug, Relafen (nabumetone). Just before trial, the case was settled for $175 million. (No. 01-12239-WGY (D. Mass.)).

***State of Connecticut Tobacco Litigation:***   Berger & Montague was one of three firms to represent the State of Connecticut in a separate action in state court against the tobacco companies. The case was litigated separate from the coordinated nationwide actions. Although eventually Connecticut joined the national settlement, its counsel's contributions were recognized by being awarded the fifth largest award among the states from the fifty states' Strategic Contribution Fund.

***In re Microcrystalline Antitrust Litigation:***   Berger & Montague was one of two co-lead counsel in this class action alleging a conspiracy to fix the price of microcrystalline cellulose, used in the manufacture of many pharmaceuticals. The case was settled shortly before trial for a total of $50 million. (MDL No. 1402 (E.D. Pa.)).

***In re Graphite Electrodes Antitrust Litigation:***   Berger & Montague was one of the four co-lead counsel in a nationwide class action price-fixing case. The case eventually settled in excess of $130 million. (02 Civ. 99-482 (E.D. Pa.)).

***In re Buspirone Antitrust Litigation:***   The firm served on the court-appointed steering committee in this class action, representing a class of primarily pharmaceutical wholesalers and resellers. The Buspirone class action alleged that pharmaceutical manufacturer BMS engaged in a pattern of illegal conduct surrounding its popular anti-anxiety medication, Buspar, namely, paying a competitor to refrain from marketing a generic version of Buspar; improperly listing a patent with the FDA; and wrongfully prosecuting patent infringement actions against generic competitors to Buspar. On April 11, 2003, the Court finally approved a $220 million settlement. (MDL No. 1410 (S.D.N.Y.)).

***In re Cardizem CD Antitrust Litigation:***   Berger & Montague served on the Executive Committee of firms appointed to represent the class of direct purchasers of Cardizem CD. The suit charged that Aventis (the brand-name drug manufacturer of Cardizem CD) entered into an illegal agreement to pay Andrx (the maker of a generic substitute to Cardizem CD) millions of dollars to delay the entry of the less expensive generic product. On November 26, 2002, the district court approved a final settlement against both defendants for $110 million. (No. 99-MD-1278, MDL No. 1278 (E.D. Mich.)).

***In re Brand Name Prescription Drugs Antitrust Litigation***:   The firm served as co-lead counsel in this antitrust price-fixing class action on behalf of a class of purchasers of brand name prescription drugs. Following certification of the class by the district court, settlements exceeded $717 million. (No. 94 C 897 (M.D. Ill.)).

***North Shore Hematology-Oncology Assoc., Inc. v. Bristol-Myers Squibb Co.:***   The firm was one of several prosecuting an action complaining of Bristol Myers's use of invalid patents to

8

block competitors from marketing more affordable generic versions of its life-saving cancer drug, Platinol (cisplatin). The case settled for $50 million. (No. 1:04CV248 (EGS) (D.D.C.)).

*In re Catfish Antitrust Litig. Action*: The firm was co-trial counsel in this action which settled with the last defendant a week before trial, for total settlements approximating $27 million. (No. 2:92CV073-D-O, MDL No. 928 (N.D. Miss.)).

*In re Carbon Dioxide Antitrust Litigation:* The firm was co-trial counsel in this antitrust class action which settled with the last defendant days prior to trial for total settlements approximating $53 million, plus injunctive relief. (MDL No. 940 (M.D. Fla.)).

*In re Infant Formula Antitrust Litigation*: The firm served as co-lead counsel in an antitrust class action where settlement was achieved two days prior to trial, bringing the total settlement proceeds to $125 million. (MDL No. 878 (N.D. Fla.)).

*Red Eagle Resources Corp., Inc., v. Baker Hughes, Inc.:* The firm was a member of the plaintiffs' executive committee in this antitrust class action which yielded a settlement of $52.5 million. (C.A. No. H-91-627 (S.D. Tex.)).

*In re Corrugated Container Antitrust Litigation:* The firm, led by H. Laddie Montague, was co-trial counsel in an antitrust class action which yielded a settlement of $366 million, plus interest, following a trial. (MDL No. 310 (S.D. Tex.)).

*Bogosian v. Gulf Oil Corp.:* With Berger & Montague as sole lead counsel, this landmark action on behalf of a national class of more than 100,000 gasoline dealers against 13 major oil companies led to settlements of over $35 million plus equitable relief on the eve of trial. (No. 71-1137 (E.D. Pa.)).

*In re Master Key Antitrust Litigation:* The firm served as co-lead counsel in an antitrust class action that yielded a settlement of $21 million during trial. (MDL No. 45 (D. Conn.)).

### Securities Litigation

*In re Merrill Lynch Securities Litigation:* Berger & Montague, as co-lead counsel, obtained a recovery of $475 million in 2009 for the benefit of the class in one of the largest recoveries among the recent financial crisis cases. (Civil Action No. 07-CV-09633 (S.D.N.Y.)).

*In re KLA Tencor Securities Litigation:* The firm, as a member of Plaintiffs' Counsel's Executive Committee, obtained cash settlement of $65 million in 2009 in an action on behalf of investors against KLA-Tencor and certain of its officers and directors. (No. 06-cv-04065 (N.D. Cal.)).

*Ginsburg v. Philadelphia Stock Exchange, Inc., et al.:* The firm represented certain shareholders of the Philadelphia Stock Exchange in the Delaware Court of Chancery and in

2008, obtained a settlement valued in excess of $99 million settlement.  (C.A. No. 2202-CC (Del. Ch.)).

*In re Sepracor Inc. Securities Litigation:*  The firm, as co-lead counsel, obtained a settlement of $52.5 million for the benefit of bond and stock purchaser classes.  (Civil Action No. 02-12235-MEL (D. Mass.)).

*In re CIGNA Corp. Securities Litigation:*  The firm, as co-lead counsel, obtained a settlement of $93 million for the benefit of the class.  (Master File No. 2:02-CV-8088 (E.D. Pa.)).

*In re Fleming Companies, Inc. Securities Litigation:*  The firm, as lead counsel, obtained a class settlement of $94 million for the benefit of the class.  (Civil Action No. 5-03-MD-1530 (TJW) (E.D. Tex.)).

*In re Xcel Energy Inc. Securities, Derivative & "ERISA" Litigation:*  The firm, as co-lead counsel in the securities actions, obtained a cash settlement of $80 million on behalf of investors against Xcel Energy and certain of its officers and directors. (Civil Action No. 02-2677 (DSD/FLN) (D. Minn.)).

*Brown v. Kinross Gold U.S.A. Inc.:*  The firm represented lead plaintiffs as co-lead counsel and obtained $29.25 million cash settlement and an additional $6,528,371 in dividends for a gross settlement value of $35,778,371.  (No. 02-CV-0605 (D. Nev.))

*In re Campbell Soup Co. Securities Litigation:*  The firm, as co-lead counsel, obtained a settlement of $35 million for the benefit of the class.  (Civil Action No. 00 152 (JEI) (D.N.J.)).

*In re Premiere Technologies, Inc. Securities Litigation:*  The firm, as co-lead counsel, obtained a class settlement of over $20 million in combination of cash and common stock. (Civil Action No.1:98-CV-1804-JOF (N.D. Ga.)).

*In re: PSINet, Inc., Securities Litigation:*  The firm, as co-lead counsel, obtained a settlement of $17.83 million on behalf of investors. (Civ. No. 00-1850-A (E.D. Va.)).

*In re Safety-Kleen Corp. Securities Litigation :*  The firm, as co-lead counsel, obtained a class settlement in the amount of $45 million against Safety-Kleen's outside accounting firm and certain of the Company's officers and directors.  The final settlement was obtained 2 business days before the trial was to commence. (C.A. No. 3:00-CV-736-17 (D.S.C.)).

*Emil Rossdeutscher and Dennis Kelly v. Viacom:*  The firm, as lead counsel, obtained a settlement resulting in a fund of $14.25 million for the class.  (C.A. No. 98C-03-091 (JEB) (Del. Super. Ct.)).

*Aldridge v. A.T. Cross Corp.:*  The firm represented a class of investors in a securities fraud class action against the A.T. Cross , and won a significant victory in the U.S. Court of Appeals

10

for the First Circuit when that Court reversed the dismissal of the complaint and lessened the pleading standard for such cases in the First Circuit, holding that it would not require plaintiffs in a shareholder suit to submit proof of financial restatement in order to prove revenue inflation. See *Aldridge v. A.T. Cross Corp.*, 284 F.3d 72 (1st Cir. 2002). The case ultimately settled for $1.5 million. (Civil Action 00203 ML (D.R.I.)).

***Silver v. UICI:***  The firm, as co-lead counsel, obtained a settlement resulting in a fund of $16 million for the class. (No. 3:99 CV 2860-L (N.D. Tex.)).

***In re Alcatel Alsthom Securities Litigation:***  In 2001, the firm, as co-lead counsel, obtained a class settlement for investors of $75 million cash. (MDL Docket No. 1263 (PNB) (E.D. Tex.)).

***In re Rite Aid Corp. Securities Litigation:***  The firm, as co-lead counsel, obtained settlements totaling $334 million against Rite Aid's outside accounting firm and certain of the company's former officers. (99 CV 1349 (E.D. Pa.)).

***In re Sunbeam Inc. Securities Litigation:***  As co-lead counsel, the firm obtained a settlement on behalf of investors of $141 million in the action against Sunbeam's outside accounting firm and Sunbeam's officers. (98 CV 8258 (S.D. Fla.)).

***In re Sotheby's Holding, Inc. Securities Litigation***:  The firm, as lead counsel obtained a $70 million settlement, of which $30 million was contributed, personally, by an individual defendant (No. 00 Civ. 1041 (DLC) (S.D.N.Y.)).

***In re Waste Management, Inc. Securities Litigation:***  In 1999, the firm, as co-lead counsel, obtained a class settlement for investors of $220 million cash which included a settlement against Waste Management's outside accountants. (97 CV 7709 (N.D. Ill.)).

***In re IKON Office Solutions Inc. Securities Litigation:***  The firm, serving as both co-lead and liaison counsel, obtained a cash settlement of $111 million in an action on behalf of investors against IKON and certain of its officers. (MDL Dkt. No. 1318 (E.D. Pa.)).

***In re Melridge Securities Litigation:***  The firm served as lead counsel and co-trial counsel for a class of purchasers of Melridge common stock and convertible debentures. A four-month jury trial yielded a verdict in plaintiffs' favor for $88.2 million, and judgment was entered on RICO claims against certain defendants for $239 million. The court approved settlements totaling $55.4 million. (CV-87-1426 FR (D. Ore.)).

***Walco Investments, Inc. et al. v. Kenneth Thenen, et al. (Premium Sales):***  The firm, as a member of the plaintiffs' steering committee, obtained settlements of $141 million for investors victimized by a Ponzi scheme. Reported at: 881 F. Supp. 1576 (S.D. Fla. 1995); 168 F.R.D. 315 (S.D. Fla. 1996); 947 F. Supp. 491 (S.D. Fla. 1996)).

***In re The Drexel Burnham Lambert Group, Inc.:***  The firm was appointed co-counsel for a mandatory non-opt-out class consisting of all claimants who had filed billions of dollars in securities litigation-related proofs of claim against The Drexel Burnham Lambert Group, Inc. and/or its subsidiaries. Settlements in excess of $2.0 billion were approved in August 1991 and became effective upon consummation of Drexel's Plan of Reorganization on April 30, 1992. (90 Civ. 6954 (MP), Chapter 11, Case No. 90 B 10421 (FGC), Jointly Administered, reported at, *inter alia*, 960 F.2d 285 (2d Cir. 1992), *cert. dismissed*, 506 U.S. 1088 (1993) ("Drexel I") and 995 F.2d 1138 (2d Cir. 1993) ("Drexel II")).

***In re Michael Milken and Associates Securities Litigation:***  As court-appointed liaison counsel, the firm was one of four lead counsel who structured the $1.3 billion "global" settlement of all claims pending against Michael R. Milken, over 200 present and former officers and directors of Drexel Burnham Lambert, and more than 350 Drexel/Milken-related entities. (MDL Dkt. No. 924, M21-62-MP (S.D.N.Y.).

***RJR Nabisco Securities Litigation:***  In this action, Berger & Montague represented individuals who sold RJR Nabisco securities prior to the announcement of a corporate change of control. This securities case settled for $72 million. (88 Civ. 7905 MBM (S.D.N.Y.)).

### Individual Securities Actions

***New Jersey v. Qwest Communications International:***  The Berger firm represented the pension funds for public employees in the State of New Jersey seeking to recover losses on their investments in Qwest common stock. The action settled for $45 million. (MER-L-3738-02 (N.J. Super. Ct., Mercer Cty.)).

***Pennsylvania Public School Employees' Retirement System, et al. v. Time Warner, Inc., et al.:***  The Berger firm represented a group of pension funds seeking to recover for losses on their investments in AOL/Time Warner common stock. The case settled for $23 million. (July 2003, No. 002103 (Pa. Ct. Com. Pl., Phila. Cty.)).

***Kelly v. McKesson HBOC, Inc.:***  The Berger firm represented a group of private shareholders who sold their companies to a large publicly-held corporation in exchange for $103.5 million in stock. The case settled for a confidential sum on the eve of trial for a percentage of plaintiffs' damages far greater than plaintiffs would have received from a related class action. (C.A. No. 99C-09-265WCC (Del. Super. Ct.)).

***Forbes v. GMH:***  The Berger firm represented a private real estate developer/investor who sold a valuable apartment complex to GMH for cash and publicly-held securities. The case settled for a confidential sum which represented a significant portion of the losses experienced. (C.A. No. 07-cv-00979 (E.D. Pa.)).

## *Environmental/Mass Tort Litigation*

***Cook v. Rockwell International Corporation:***  In February 2006, the firm won a $554 million jury verdict on behalf of thousands of property owners whose homes were exposed to plutonium or other toxins.  Judgment in the case was entered by the court in June 2008 which, with interest, totaled $926 million (with proceedings now continuing on appeal).  Recognizing this tremendous achievement, the Public Justice Foundation bestowed its prestigious Trial Lawyer of the Year Award for 2009 on Mr. Davidoff, Mr. Sorensen and the entire trial team for their "long and hard-fought" victory against "formidable corporate and government defendants."  (No. 90-cv-00181-JLK (D. Colo.)).  The jury verdict was subsequently vacated on appeal.

***In re Exxon Valdez Oil Spill Litigation:***  On September 16, 1994, a jury trial of several months duration resulted in a record punitive damages award of $5 billion against the Exxon defendants as a consequence of one of the largest oil spills in U.S. history.  The award was reduced to $507.5 million pursuant to a Supreme Court decision.  David Berger was co-chair of the plaintiffs' discovery committee (appointed by both the federal and state courts).  Harold Berger served as a member of the organizing case management committee.  H. Laddie Montague was specifically appointed by the federal court as one of the four designated trial counsel.  Both Mr. Montague and Peter Kahana shared (with the entire trial team) the 1995 "Trial Lawyer of the Year Award" given by the Trial Lawyers for Public Justice.  (No. A89-0095-CVCHRH (D. Alaska)).

***In re Ashland Oil Spill Litigation:***  The firm led by Harold Berger served as co-lead counsel and obtained a $30 million settlement for damages resulting from a very large oil spill. (Master File No. M-14670 (W.D. Pa.)).

***In re School Asbestos Litigation:***  As co-lead counsel, the firm successfully litigated a case in which a nationwide class of elementary and secondary schools and school districts suffering property damage as a result of asbestos in their buildings were provided relief.  Pursuant to an approved settlement, the class received in excess of $70 million in cash and $145 million in discounts toward replacement building materials. (No. 83-0268 (E.D. Pa.)).

***Drayton v. Pilgrim's Pride Corp.:***  The firm served as counsel in a consolidation of wrongful death and other catastrophic injury cases brought against two manufacturers of turkey products, arising out of a 2002 outbreak of Listeria Monocytogenes in the Northeastern United States, which resulted in the recall of over 32 million pounds of turkey – the second largest meat recall in U.S. history at that time.  A significant opinion issued in the case is *Drayton v. Pilgrim's Pride Corp.*, 472 F.Supp.2d 638 (E.D. Pa. 2006) (denying the defendants' motions for summary judgment and applying the alternative liability doctrine).  All of the cases settled on confidential terms in 2006.  (No. 03-2334 (E.D. Pa.)).

***In re SEPTA 30th Street Subway/Elevated Crash Class Action:***  Berger & Montague represented a class of 220 persons asserting injury in a subway crash. Despite a statutory cap of $1 million on damages recovery from the public carrier, and despite a finding of sole fault of the

13

public carrier in the investigation by the National Highway Transit Safety Administration, Berger & Montague was able to recover an aggregate of $3.03 million for the class.  (1990 Master File No. 0001 (Pa. Ct. Com. Pls., Phila. Cty.)).

*In re Three Mile Island Litigation:*  As lead/liaison counsel, the firm successfully litigated the case and reached a settlement in 1981 of $25 million in favor of individuals, corporations and other entities suffering property damage as a result of the nuclear incident involved.  (C.A. No. 79-0432 (M.D. Pa.)).

### Health Care/ERISA Litigation

*In re Unisys Corp. Retiree Medical Benefits:*  The firm, as co-lead counsel, handled the presentation of over 70 witnesses, 30 depositions, and over 700 trial exhibits in this action that has resulted in partial settlements in 1990 of over $110 million for retirees whose health benefits were terminated. (MDL No. 969 (E.D. Pa.)).

*Local 56 U.F.C.W. v. Campbell Soup Co.:*  The firm represented a class of retired Campbell Soup employees in an ERISA class action to preserve and restore retiree medical benefits. A settlement yielded benefits to the class valued at $114.5 million. (No. 93-MC-276 (SSB) (D.N.J.)).

### Civil/Human Rights

*In re Holocaust Victim Assets Litigation:*  Through membership on the executive committee in cases brought by Holocaust survivors against the three largest Switzerland-based banks, this litigation was settled for $1.25 billion. (105 F. Supp.2d 139 (E.D.N.Y. 2000)).

*In re Nazi Era Cases Against German Defendants Litigation:*  Through the firm's co-lead counsel role, cases against German industry and banks for the use of slave and forced labor during the Nazi era were ultimately settled in the context of international negotiations which created a fund for victims of $4.5 billion. (198 F.R.D. 429 (D.N.J. 2000)).

### Consumer Litigation

*Countrywide Predatory Lending Enforcement Action:*  Berger & Montague advised the Ohio Attorney General (and several other state attorneys general) regarding predatory lending in a landmark law enforcement proceeding against *Countrywide* (and its parent, Bank of America) culminating in 2008 in mortgage-related modifications and other relief for borrowers across the country valued at some $8.6 billion.

*In re Pet Foods Product Liability Litigation*: The firm is one of plaintiffs' co-lead counsel in this multidistrict class action suit seeking to redress the harm resulting from the manufacture and

sale of contaminated dog and cat food. The case has been settled for $24 million. Many terms of the settlement are unique and highly beneficial to the class, including allowing class members to recover up to 100% of their economic damages without any limitation on the types of economic damages they may recover. There is an appeal pending regarding settlement approval. (1:07-cv-02867 (D.N.J.), MDL Docket No. 1850 (D.N.J.)).

***In re TJX Companies Retail Security Breach Litigation***: The firm served as co-lead counsel in this multidistrict litigation brought on behalf of individuals whose personal and financial data was compromised in the then-largest theft of personal data in history. The breach involved more than 45 million credit and debit card numbers and 450,000 customers' driver's license numbers. The case was settled for benefits valued at over $200 million. Class members whose driver's license numbers were at risk were entitled to 3 years of credit monitoring and identity theft insurance (a value of $390 per person based on the retail cost for this service), reimbursement of actual identity theft losses, and reimbursement of driver's license replacement costs. Class members whose credit and debit card numbers were at risk were entitled to cash of $15-$30 or store vouchers of $30-$60. (No. 1:07-cv-10162-WGY, (D. Mass.)).

***In Re: Heartland Payment Systems, Inc. Customer Data Security Breach Litigation:*** The firm served on the Executive Committee of this multidistrict litigation and obtained a settlement of cash and injunctive relief for a class of 130 million credit card holders whose credit card information was stolen by computer hackers. The breach was the largest known theft of credit card information in history. The settlement is subject to court approval. (No. 4:09-MD-2046 (S.D. Tex. 2009)).

***In re: Countrywide Financial Corp. Customer Data Security Breach Litigation***: The firm served on the Executive Committee of this multidistrict litigation and obtained a settlement for a class of 17 million individuals whose personal information was at risk when a rouge employee sold their information to unauthorized third parties. Settlement benefits included: (i) reimbursement of several categories of out-of-pocket costs; (ii) credit monitoring and identity theft insurance for 2 years for consumers who did not accept Countrywide's prior offer of credit monitoring; and (iii) injunctive relief. The settlement is subject to court approval. (3:08-md-01998-TBR (W.D. Ky. 2008)).

***In re Educational Testing Service Praxis Principles of Learning and Teaching: Grades 7-12 Litigation:*** The firm served on the plaintiffs' steering committee and obtained an $11.1 million settlement in 2006 on behalf of persons who were incorrectly scored on a teacher's licensing exam. (MDL No. 1643 (E.D. La.)).

***Vadino, et al. v. American Home Products Corporation, et al.:*** The firm filed a class complaint different from that filed by any other of the filing firms in the New Jersey State Court "Fen Phen" class action, and the class sought in the firm's complaint was ultimately certified. It was the only case anywhere in the country to include a claim for medical monitoring. In the midst of trial, the New Jersey case was folded into a national settlement which occurred as the trial was

ongoing, and which was structured to include a medical monitoring component worth in excess of $1 billion.  (Case Code No. 240 (N.J. Super. Ct.)).

***Parker v. American Isuzu Motors, Inc.***:  The firm served as sole lead counsel and obtained a settlement whereby class members recovered up to $500 each for economic damages resulting from accidents caused by faulty brakes.  (Sept. Term 2003, No. 3476 (Pa. Ct. Com. Pl., Phila. Cty.)).

***In re: Bridgestone Firestone, Inc. ATX, ATX II and Wilderness Tires Products Liab. Litig.***:  The firm filed a complaint that was later consolidated into the master multidistrict litigation (MDL).   Claims in the MDL were focused on: (1) products liability claims against Bridgestone/Firestone for faulty tires; and (2) diminution in value (DIV) claims against Ford for the falling value of Ford Explorers.  B&M was one of three firms on the Discovery Committee.  After surviving in part the motion to dismiss, engaging in substantial discovery, and litigating the motion for class certification, the case was settled on a non-class basis. (Master File No. 00-ml-09374-SEB-JMS (S.D. Ind.), MDL No. 1373).

***Salvucci v. Volkswagen of America, Inc. d/b/a Audi of America, Inc.***:  The firm served as co-lead counsel in litigation brought on behalf of a nationwide class alleging that defendants failed to disclose that its vehicles contained defectively designed timing belt tensioners and associated parts and that defendants misrepresented the appropriate service interval for replacement of the timing belt tensioner system.  After extensive discovery, a settlement was reached.  (Docket No. ATL-1461-03 (N.J. Sup. Ct. 2007)).

***Burgo v. Volkswagen of America, Inc. d/b/a Audi of America, Inc.***:  The firm served as co-lead counsel in litigation brought on behalf of a nationwide class against premised on defendants' defective tires that were prone to bubbles and bulges.  Counsel completed extensive discovery and class certification briefing.   A settlement was reached while the decision on class certification was pending.   The settlement consisted of remedies including total or partial reimbursement for snow tires, free inspection/replacement of tires for those who experienced sidewall bubbles, blisters, or bulges, and remedies for those class members who incurred other costs related to the tires' defects.  (Docket No. HUD-L-2392-01 (N.J. Sup. Ct. 2001)).

***Crawford v. Philadelphia Hotel Operating Co.***:  The firm served as co-lead counsel and obtained a settlement whereby persons who contracted food poisoning at a business convention recovered $1,500 each.  (March Term, 2004, No. 000070 (Pa. Ct. Com. Pl., Phila. Cty.)).

***Block v. McDonald's Corporation***:  The firm served as co-lead counsel and obtained a settlement of $12.5 million with McDonald's stemming from its failure to disclose the use of beef fat in its french fries.  (No. 01-CH-9137 (Ill. Cir. Ct., Cook Cty.)).

16

## *Employment Litigation*

***Employees Committed for Justice v. Eastman Kodak Company:***  The firm served as co-lead counsel and obtained a settlement of $21.4 million on behalf of a nationwide class of African American employees of Kodak alleging a pattern and practice of racial discrimination (pending final approval).  A significant opinion issued in the case is *Employees Committed For Justice v. Eastman Kodak Co.*, 407 F.Supp.2d 423 (W.D.N.Y. 2005) (denying Kodak's motion to dismiss).  No. 6:04-cv-06098 (W.D.N.Y.)).

***Salcido v. Cargill Meat Solutions Corp.:***  The firm served as co-lead counsel and obtained a settlement of $7.5 million on behalf of a class of thousands of employees of Cargill Meat Solutions Corp. alleging that they were forced to work off-the-clock and during their breaks.  This is one of the largest settlements of this type of case involving a single plant in U.S. history.  (Civil Action Nos. 1:07-cv-01347-LJO-GSA and 1:08-cv-00605-LJO-GSA (E.D. Cal.)).

***Miller v. Hygrade Food Products, Inc.:***  The firm served as lead counsel and obtained a settlement of $3.5 million on behalf of a group of African American employees of Sara Lee Foods Corp. to resolve charges of racial discrimination and retaliation at its Ball Park Franks plant.  (No. 99-1087 (E.D. Pa.)).

***Chabrier v. Wilmington Finance, Inc.:***  The firm served as co-lead counsel and obtained a settlement of $2,925,000 on behalf of loan officers who worked in four offices of to resolve claims for unpaid overtime wages.  A significant opinion issued in the case is *Chabrier v. Wilmington Finance, Inc.*, 2008 WL 938872 (E.D. Pa. April 04, 2008) (denying the defendant's motion to decertify the class).  (No. 06-4176 (E.D. Pa.)).

***Bonnette v. Rochester Gas & Electric Co.:***  The firm served as co-lead counsel and obtained a settlement of $2 million on behalf of a class of African American employees of Rochester Gas & Electric Co. to resolve charges of racial discrimination in hiring, job assignments, compensation, promotions, discipline, terminations, retaliation, and a hostile work environment.  (No. 07-6635 (W.D.N.Y.)).

***Confidential.***  The firm served as lead counsel and obtained a settlement of $6 million on behalf of a group of African American employees of a Fortune 100 company to resolve claims of racial discrimination, as well as injunctive relief which included significant changes to the Company's employment practices (settled out of court while charges of discrimination were pending with the U.S. Equal Employment Opportunity Commission).

### THE SHAREHOLDERS:

### Daniel Berger

Daniel Berger graduated with honors from Princeton University (Class of 1969) and Columbia Law School (1974) where he was a Harlan Fiske Stone academic scholar.  He is presently a senior member and shareholder of the firm, for which he serves as Managing Shareholder. Over the last 15 years, he has been involved in a number of complicated commercial cases including class action securities, antitrust, mass tort and bankruptcy cases.  In the antitrust area, he has headed up the firm's involvement in highly successful litigation against brand and generic prescription drug manufacturers in which the Berger Firm has been co-lead counsel, a member of various executive committees or otherwise played a key role including, *inter alia*, the following cases:  *Duane Reade Co. v. Aventis et al.* ($110 million settlement involving prescription drug Hytrin); *Louisiana Wholesale Drug Co. v. Bristol-Myers Squibb* ($220 million settlement involving prescription drug Buspar); *Valley Drug Co. v. Abbott Laboratories et al.,* (pending case involving agreements by brand and generic drug companies to delay generic entry); *Louisiana Wholesale Drug Co. v. Schering Plough* (pending case involving agreements by brand and generic drug companies to delay generic entry); and *Louisiana Wholesale Drug Co. v. Glaxo SmithKline Co.* (pending case involving fraud on the U.S. Patent Office and improper FDA listing by a brand prescription drug manufacturer which delayed generic entry.  In the civil rights area, he has been counsel in informed consent cases involving biomedical research and human experimentation by federal and state governmental entities.

Daniel Berger also has a background in the study of economics having done graduate level work in applied micro-economics and macro-economic theory, the business cycle and economic history.  He has published law review articles in the *Yale Law Journal*, the Duke University *Journal of Law and Contemporary Problems* and the New York Law School *Law Review* and worked with the American Law Institute /American Bar Association program on continuing legal education.   He has been affiliated with the Kennedy School of Government through the Shorenstein center of Media and Public Policy at Harvard University.

Mr. Berger has been active in city government in Philadelphia and was a member of the Mayor's Cultural Advisory Council, advising the Mayor of Philadelphia on arts policy and the Philadelphia Cultural Fund, which is responsible for all city grants to arts organizations. Mr. Berger was also a member of the Pennsylvania Humanities Council, one of the State organizations through which the National Endowment for the Humanities makes grants.

Mr. Berger is also an author and journalist and has published in the *Nation* magazine and reviewed books for the *Philadelphia Inquirer*.

18

## Eric L. Cramer

Eric L. Cramer graduated *summa cum laude* from Princeton University (A.B. 1989), where he was selected for Phi Beta Kappa, and *cum laude* from Harvard Law School (J.D. 1993).  He is admitted to practice in Pennsylvania and New York, and various federal courts.

In June 2005, Chambers USA *America's Leading Lawyers for Business* honored Mr. Cramer as one of Philadelphia's "up and coming" antitrust lawyers, noting that he is "admired [by his peers] for his strong analytical skills" and recognized for his "expert knowledge of the economic side of the law."   Moreover, the June 2005 edition of Philadelphia Magazine selected Mr. Cramer as one of the City's *"Super Lawyers,"* based on his work in the antitrust field.

Since joining Berger & Montague in 1995, Mr. Cramer has concentrated his practice in complex public protection litigation, representing victims of mass torts and those injured by violations of antitrust and consumer protection laws.  Mr. Cramer has spent the past five years prosecuting antitrust class actions on behalf of direct purchasers of brand name drugs, charging pharmaceutical manufacturers with illegally blocking the market entry of less expensive competitor drugs.  In four such cases, Mr. Cramer was significantly responsible for winning class certification.  *See In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297 (E.D. Mich. 2001); *In re Buspirone Patent & Antitrust Litig.*, 210 F.R.D. 43 (S.D.N.Y. 2002); *In re Premarin Antitrust Litig.*, 225 F.R.D. 208 (S.D. Ohio 2003); and *In re Relafen Antitrust Litig.*, 218 F.R.D. 337 (D. Mass. 2003).

In the last three years, Mr. Cramer and his colleagues have won substantial settlements in six of these cases for a combined total of more than $700 million: *Cardizem* settled in November 2002 for $110 million; *Buspirone* settled in April of 2003 for $220 million; *Relafen* settled in February 2004 for $175 million; *In re Platinol Antitrust Litig.* settled in November 2004 for $50 million; *In re Terazosin Hydrochloride Antitrust Litig.* settled in April 2005 for nearly $75 million; and *In re Remeron Antitrust Litig.* settled in November 2005 for $75 million.

In addition, Mr. Cramer was significantly responsible for winning class certification in *In re Microcrystalline Cellulose Antitrust Litigation*, No. 01-CV-111 (E.D. Pa. Aug. 13, 2003).

Mr. Cramer recently co-sponsored, and presented at, a symposium in November 2004, focusing on antitrust issues in the pharmaceutical industry, at the University of San Francisco School of Law.  Several articles from the symposium were published in the Fall 2004 edition of that school's law review, including a piece co-authored by Mr. Cramer with his partner, Daniel Berger, entitled *The Superiority of Direct Proof of Monopoly Power and Anticompetitive Effects in Antitrust Cases Involving Delayed Entry of Generic Drugs*, 39 U.S.F. Law Rev. 81 (Fall 2004). Mr. Cramer has also taught several seminars on the law of class actions and expert witnesses sponsored by the National Business Institute in Philadelphia.

Mr. Cramer began his career representing victims of human radiation experimentation carried out by the federal government in conjunction with state and private actors as part of the U.S.

atomic weapons program during the Cold War. He helped resolve two such cases for over $4.7 million combined, and was principally responsible for a reversal by the Ninth Circuit Court of Appeals of a summary judgment dismissal of one of those cases on statute of limitations grounds. *See Bibeau, et al. v. Pacific Northwest Research Foundation, et al.*, 188 F.3d 1105 (9th Cir. 1999).

Mr. Cramer is also active in community affairs, specifically those involving public education. He is a co-founder, current member, and past President of the Board of Trustees of the Independence Charter School, for which he also acted as litigation counsel. After a successful appeal to the Pennsylvania Charter School Appeal Board, which granted the school a charter, Mr. Cramer secured an affirmance by the Commonwealth Court. *See School District of Philadelphia v. Independence Charter School*, 2001 Pa. Commw. LEXIS 279 (May 3, 2001). The Center City Philadelphia charter school opened its doors to nearly three-hundred elementary age school children in the Fall of 2001. Mr. Cramer also serves on the Board of the Center for Literacy, one of largest non-profit adult literacy organizations in the country.

## Bret Flaherty

Since joining Berger & Montague in 1992, Mr. Flaherty has specialized in complex commercial litigation involving areas such as consumer protection and products liability class action, breach of contract, employment, international human rights, consumer fraud and lender liability, including *Provident American Corp. and Provident Indemnity Life Insurance Company v. The Loewen Group Inc. and Loewen Group International Inc.*, E.D. PA. ($30 million recovery in a claimed 10-year verbal contract case); *In Re: Bridgestone/Firestone, Inc. Tires Product Liability Litigation*, MDL No. 1373 (S.D. Ind.)(multijurisdictional litigation relating to Firestone tires and the Ford Explorer); *Kiobel, et al v. Royal Dutch Petroleum Company*, et al., (S.D.N.Y.) (relating to human rights violations in Nigeria against the Ogoni people) and *Unisys ERISA Benefits Litigation* (E.D. PA.). Mr. Flaherty has also defended the owner of a landmark hotel in Philadelphia in litigation relating to the acquisition of the hotel. Mr. Flaherty's practice also includes transactional corporate matters.

Mr. Flaherty is a member and Vice Chair of the Board of Trustees of the Folk Arts - Cultural Treasures Charter School, the first public elementary school to be located in Philadelphia's Chinatown. Since 1993, Mr. Flaherty has been active in Asian Americans United, a non-profit, community organization which is a leading advocate on public education issues in Philadelphia and a variety of other issues affecting the Asian and immigrant communities in Philadelphia.

## Charles P. Goodwin

Mr. Goodwin joined Berger & Montague, following his 1992 graduation *cum laude* from the University of Pennsylvania Law School, where he was an editor of the *University of Pennsylvania Law Review*. Prior to attending law school, Mr. Goodwin graduated *cum laude* from Williams College (where he received the Graves Essay Prize in economics), and enrolled in

graduate studies in economics at Stanford University.   Mr. Goodwin also has engaged in commercial litigation practice in New York.   With Berger & Montague, Mr. Goodwin is concentrating in antitrust and employee benefits litigation.  Mr. Goodwin is admitted to practice law in the Commonwealth of Pennsylvania.

### David F. Sorensen

Mr. Sorensen graduated from Duke University (B.A. *magna cum laude* 1983) and from Yale University (J.D. 1989).  He was Law Clerk to the Hon. Norma L. Shapiro (E.D. Pa.), in 1990-1991.  He is admitted to practice law in the Commonwealth of Pennsylvania, the United States Supreme Court, and numerous federal Courts of Appeal.

Mr. Sorensen practices in the areas of complex mass tort and antitrust class action litigation.  He helped try a class action property damage case, *Cook v. Rockwell Corp.,* that resulted in a jury verdict of $554 million on February 14, 2006, after a four-month trial, on behalf of thousands of property owners near the former Rocky Flats nuclear weapons plant located outside Denver, Colorado.  The verdict was the third-largest jury verdict of 2006 in the United States, according to *The National Law Journal*; the largest in Colorado history; and was the first time a jury had awarded damages to property owners living near one of the nation's nuclear weapons sites.  In 2008, the District Court entered a $926 million judgment for plaintiffs.  In July 2009, the trial team, including Mr. Sorensen, won the "Trial Lawyer of the Year" award from the Public Justice Foundation, for its work on the *Cook* case.  That verdict was vacated on appeal; a petition for rehearing is pending.

Mr. Sorensen also played a major role in the firm's representation of the State of Connecticut in *State of Connecticut v. Philip Morris, Inc., et al.*, in which Connecticut recovered approximately $3.6 billion from certain manufacturers of tobacco products.

Mr. Sorensen also has played major roles in a number of antitrust cases representing direct purchasers of prescription drugs.  These cases have alleged that pharmaceutical manufacturers have wrongfully kept less expensive generic drugs off of the market, in violation of federal antitrust laws.  Several of these cases have resulted in substantial cash settlements, including *In re Terazosin Hydrochloride Antitrust Litigation*, MDL 1317 (S.D. Fla.) ($75 million); and *In re Remeron Antitrust Litig.* (D.N.J.) ($75 million).  Mr. Sorensen also argued and won class certification in *In re K-Dur Antitrust Litigation*, 2008 WL 2699390 (D.N.J. April 14, 2008), and *In re Nifedipine Antitrust Litigation*, 246 F.R.D. 365 (D.D.C. 2007); and argued and obtained a precedent-setting victory in *In re DDAVP Direct Purchaser Antitrust Litigation,* 585 F.3d 679 (2d Cir. 2009), in which the Second Circuit held that direct purchasers had standing to seek antitrust damages relating to *Walker Process* patent fraud.  Most recently, he argued on behalf of direct purchaser plaintiffs in *King Drug Co. v. Cephalon, Inc.,* __ F. Supp. 2d __, 2010 WL 1221793 (E.D. Pa. March 29, 2010), in which the court denied defendants' motions to dismiss antitrust claims arising from agreements between Cephalon and its generic competitors that, plaintiffs allege, have wrongfully blocked generic competition.

Mr. Sorensen presented at symposia in November 2004, and in September 2009, focusing on antitrust issues in the pharmaceutical industry, at the University of San Francisco School of Law, and co-authored, with one of the school's law professors, Joshua P. Davis, *Chimerical Class Conflicts in Federal Antitrust Litigation: The Fox Guarding the Chicken House in Valley Drug*, 39 U.S.F. Law Review 141 (Fall 2004).

In October, 2007, Mr. Sorensen was on the faculty of a continuing education program for all Pennsylvania Common Pleas judges (trial court).  He also has been a guest lecturer at the University of Colorado Law School.

Mr. Sorensen has been named as one Pennsylvania's "SuperLawyers," every year since 2005 in the Philadelphia Magazine; and has received the highest peer-review rating, "AV," in Martindale-Hubbell.

**OUR ASSOCIATES**:

### Neill W. Clark

Neill W. Clark graduated *cum laude* from Appalachian State University in 1994 (B.A.) and from Temple University School of Law in 1998 (J.D.), where he earned seven "distinguished class performance" awards, an oral advocacy award and a "best paper" award. After graduating from law school, he clerked for Judge Stephen E. Levin, who handled pre-trial proceedings in all class actions filed in the Court of Common Pleas, Philadelphia County.

Since joining the firm in 1999, Mr. Clark has been significantly involved in prosecuting antitrust class actions on behalf of direct purchasers of brand name drugs and charging pharmaceutical manufacturers with illegally blocking the market entry of less expensive competitors.

Six of those cases have resulted in substantial settlements totaling over $700 million: *In re Cardizem CD Antitrust Litig.* settled in November 2002 for 110 million; *In re Buspirone Antitrust Litig.* settled in April 2003 for 220 million; *In re Relafen Antitrust Litig.* settled in February 2004 for $175 million; *In re Platinol Antitrust Litig.* settled in November 2004 for $50 million; *In re Terazosin Antitrust Litig.* settled in April 2005 for $75 million; and *In re Remeron Antitrust Litig.* settled in November 2005 for $75 million.

Mr. Clark was selected as a "Rising Star" by Pennsylvania Super Lawyers and listed as one of the Top Young Lawyers in Pennsylvania in the December 2005 edition of Philadelphia Magazine.

An avid runner, Mr. Clark has won the Lawyer's Division of the annual Philadelphia Bar Association race seven consecutive times.

### Candice J. Enders

Candice Enders is a member of Berger & Montague's antitrust department. She received a B.A. in political science from the University of Delaware in 2000 and earned her J.D. from the University of Pennsylvania in 2003.

While in law school, Ms. Enders served as a senior editor on the Journal of Labor and Employment Law, volunteered as a legal advocate at the Custody and Support Assistance Clinic, and interned at Philadelphia City Council.

Since joining the Berger firm in 2003, she has concentrated entirely on the litigation of antitrust class action cases, including *In re Microcrystalline Cellulose Antitrust Litigation* (E.D. Pa.) ($50 million settlement achieved shortly before trial); *In re Methyl Methacrylate (MMA) Antitrust Litigation* (E.D. Pa.) ($15,100,000 settlement pending); *In re TFT-LCD (Flat Panel) Antitrust Litigation* (N.D. Cal.); and *In re Cathode Ray Tube (CRT) Antitrust Litigation* (N.D. Cal.).

### Shauna Itri

Shauna Itri received a B.A. and an M.A. from Stanford University in 2000 and 2001. She graduated Villanova Law School in 2005 and is currently licensed to practice law in Pennsylvania and New Jersey. While attending law school Shauna was the Editor-in-Chief of the *Villanova Law School Sports & Entertainment Law Journal* and published an article entitled "*Maurice Clarett v. N.F.L.*: An Analysis of Clarett's Challenge to the Legality of the NFL's Draft Eligibility Rule Under Antitrust Laws."

While attending Stanford University Shauna was a member of the Stanford University Women's Soccer Team and captained the team from 1999-2001.

Since joining the law firm of Berger & Montague, Shauna has practiced primarily in the area of securities class action litigation.

### Neil F. Mara

Neil F. Mara is a graduate of the College of the Holy Cross (B.A. 1987) and the University of Connecticut (J.D. 1991) where he was a member of the executive board of the Moot Court Honor Society. Mr. Mara was an Assistant District Attorney in Philadelphia, Pennsylvania, from 1991-1997. He was also a Special Assistant United States Attorney for the Eastern District of Pennsylvania, 1996-1997, where he prosecuted large narcotics organizations. Since joining the Berger firm, he has concentrated on environmental litigation and securities litigation. Mr. Mara is admitted to practice law in Connecticut, Pennsylvania, and various federal courts.

### Ellen T. Noteware

Ms. Noteware earned her undergraduate degree from Cornell University (B.S. 1989) and graduated first in her class from the University of Wisconsin Law School (J.D. 1993) where she served as Associate Editor of the Wisconsin Law Review.

Following graduation, Ms. Noteware clerked for the Honorable J. Calvitt Clarke, Jr. in the United States District Court for the Eastern District of Virginia. Prior to joining Berger & Montague, Ms. Noteware handled complex commercial litigation, products liability, employment law, ERISA and trade secret disputes as an associate at Arnold & Porter in Washington, D.C. and at Morgan, Lewis & Bockius in Philadelphia. Ms. Noteware continues to handle a wide range of complex litigation and class action matters as a member of Berger & Montague's Antitrust and Securities Departments.

Ms. Noteware helped try a class action property damage case, *Cook v. Rockwell Corp.,* that resulted in a jury verdict of $554 million on February 14, 2006, after a four-month trial, on behalf of thousands of property owners near the former Rocky Flats nuclear weapons plant located outside Denver, Colorado. The verdict was the third-largest jury verdict of 2006 in the United States, according to *The National Law Journal*; the largest in Colorado history; and was the first time a jury had awarded damages to property owners living near one of the nation's nuclear weapons sites. In 2008, the District Court entered a $926 million judgment for plaintiffs. In July 2009, the trial team, including Ms. Noteware, won the "Trial Lawyer of the Year" award from the Public Justice Foundation. That verdict was vacated on appeal; a petition for rehearing is pending.

Ms. Noteware has played a major role in a number of antitrust cases representing direct purchasers of prescription drugs. Several of these cases have resulted in substantial cash settlements including *In re Tricor Antitrust Litigation* (D. Del.) ($250 million) and *Meijer, Inc. v. Barr Pharmaceuticals, Inc.,* (D.D.C.) ($22 million). In addition, Ms. Noteware has served as lead or co-lead counsel in several of the leading cases asserting the ERISA rights of 401(k) plan participants, including *In re Lucent Technologies, Inc. ERISA Litigation* (D.N.J.); *In re Nortel Networks Corp. ERISA Litigation* (M.D. Tenn.); *In re SPX Corporation ERISA Litigation* (W.D. N.C.); and *King v. Wal-Mart Stores, Inc.* (D. Nev.). Ms. Noteware also served as co-lead counsel in a racial discrimination case in *Employees Committed for Justice v. Eastman Kodak Company* (W.D.N.Y.).

## **Daniel Simons**

Mr. Simons is a member of Berger & Montague's Antitrust Department.  He received a Bachelor of Arts in Political Science, magna cum laude, from Yeshiva University in 1997.  In addition to winning the Political Science departmental award two years running, Mr. Simons also garnered three awards for scholastics and student leadership upon graduation.

He earned his J.D. with honors, at Temple Law School in May, 2000, where he headed three student groups, served on Temple Law Review, and interned in the Health Care Fraud Unit of the United States Attorney's Office.  Following graduation, he clerked for the Honorable Berle M. Schiller of the Eastern District of Pennsylvania.  He has also served as a volunteer in the Philadelphia Reads Program.

Mr. Simons is admitted to practice in Pennsylvania and New Jersey, as well as in the United States District Courts for the Eastern District of Pennsylvania and for the District of New Jersey. He is a member of the American Bar Association and it Antitrust Section.